UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

15 CV        898

John Olagues
In proper person

<u>Initial Complaint</u>

A Private Right of Action
on behalf of the issuer Herbalife, the
issuer Nuance Communications
and the issuer Hologic Inc.
arising under Section 16 b
of the Securities act of 1934
<u>Jury Trial Demanded</u>

Plaintiff

v.

ICAHN ASSOCIATES HOLDING LLC
ICAHN PARTNERS MASTER FUND LP
 Carl C. Icahn
<u>HIGH RIVER LIMITED PARTNERSHIP</u>
ICAHN PARTNERS LP
 <u>and</u>
<u>Herbalife</u>

ICAHN ASSOCIATES HOLDING LLC
ICAHN PARTNERS MASTER FUND LP
CARL C. ICHAN
<u>HIGH RIVER LIMITED PARTNERSHIP</u>
ICAHN PARTNERS LP
 <u>and</u>
<u>Nuance Communiications</u>

 ICAHN ASSOCIATES HOLDING LLC
ICAHN PARTNERS MASTER FUND LP
<u>CARL C. ICAHN</u>
<u>HIGH RIVER LIMITED PARTNERSHIP</u>
ICAHN PARTNERS LP
<u>and</u>
<u>Hologic Inc.</u>

Defendants

————————————————————

PAGE 1 OF 22

Plaintiff alleges, based upon knowledge with respect to the facts relating to him and upon information and belief with respect to all other allegations, as follows:

## INTRODUCTION

1. This action is brought pursuant to Section 16(b) of the Securities Exchange Act of 1934, as amended (the "Exchange Act"), [15 U.S.C. 78p(b)] ("Section 16(b)") in order to recover short-swing insider trading profits realized by

ICAHN ASSOCIATES HOLDING LLC
ICAHN PARTNERS MASTER FUND LP
ICAHN CARL C
HIGH RIVER LIMITED PARTNERSHIP
ICAHN PARTNERS LP

while they, as a group, were insiders as beneficial owners of 10% or more of the stock of Herbalife,

while they, as a group, were insiders as beneficial owners of 10% or more of the stock of Nuance Communications, and

while they, as a group, were insiders as beneficial owners of 10% or more of the stock of Hologic Inc.

2. The Icahn Group were 10% beneficial owners when sales (i.e. writes) of over-the-counter puts were made and the Icahn Group was a 10% beneficial owner when those over-the-counter puts were cancelled within 6 months or less of the date of sales (i.e. writes), which caused violations of Section 16 b of the Securities Act of 1934.

3. Defendants are;

ICAHN ASSOCIATES HOLDING LLC ,
ICAHN PARTNERS MASTER FUND LP,

PAGE 2 OF 22

ICAHN CARL C,
HIGH RIVER LIMITED PARTNERSHIP, and
ICAHN PARTNERS LP

4. Section 16b and SEC Rule 16-b-6(d) requires 10% beneficial owners to disgorge any profits (premium received) earned from writing puts that expire worthless or are cancelled within 6 months of the writing.
The writers must be beneficial owners of 10% of the outstanding shares on the date of "writing" of the puts and on the last day the puts can be exercised or when they are cancelled.

5. Section 16 b of the 1934 Act requires those 10% beneficial owners to pay the profits to the issuer that were made from the non-exempt writing of the puts  and the non-exempt expiration or cancellation of the puts within 6 months of the writing of the puts.

PARTIES

6. Plaintiff John Olagues is a shareholder of  Hebalife, Hologic Inc, and Nuance Communications.

7. The following defendants have offices in New York, New York:

Icahn Associates Holding LLC
Icahn Partners Masterfund LP
Carl Icahn
High River Limited Partnership
Icahn Partners LP

8. Herbalife's common stock ("Common Stock") is registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12 of the Exchange Act and the Common Stock trades on the New York Stock Exchange under the symbol

HLF

8 a.  Herbalife (HLF) is a necessary party as this action is brought by Plaintiff in order to obtain a recovery for the Firm.

9.  Nuance Communication's common stock ("Common Stock") is registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12 of the Exchange Act and the Common Stock trades on the New York Stock Exchange under the symbol NUAN.

10. Nuance  Communication (NUAN) is a necessary party as this action is brought by Plaintiff in order to obtain a recovery for the Firm.

11  Hologic's common stock ("Common Stock") is registered with the United States Securities and Exchange Commission ("SEC") pursuant to Section 12 of the Exchange Act and the Common Stock trades on the New York Stock Exchange under the symbol HOLX.

12. Hologic Inc. (HOLX ) is a necessary party as this action is brought by Plaintiff in order to obtain a recovery for the Firm.

<u>JURISDICTION AND VENUE</u>

13. Jurisdiction of this Court is proper pursuant to Section 27 of the Exchange Act [15U.S.C. §78aa].

14. Venue is properly laid in this District because Defendant Carl Icahn and Group  are located in this District.

PAGE 4 OF 22

## 60 DAY NOTICES TO HERBALIFE

15. The 60 day notices were sent by Plaintiff to Herbalife to request that they request and seek from the Icahn Group the profits that resulted from their 16 b violations. These notices were not responded to although they did sign the return receipts from the certified mail.

## 60 DAY NOTICES TO NUANCE COMMUNICATIONS

16. The 60 day notices were sent by Plaintiff to Nuance Communications to request that they seek from the Icahn Group the profits that resulted from their 16 b violations. These requests were answered by letters stating that the Icahn Group conceded that they violated Section 16 b but that the profits were just one penny per shares of stock, when in fact their profits were between 0.65 cents and $1.20 cents per shares of stock. **See Exhibit 1a...Attached.** The letter from Robert Sanchaze of Wilson and Sonsini Oct 29, 2014.

The letter indicated that the Icahn Group returned $186,000 to NUAN in settlement of the return of profits earned from the sales of puts on 18,600,000 shares. The true profits were approximately $18,600,000, consisting of the one penny plus the discount on the calls that Icahn bought. Nuance refused to seek further amounts.

## 60 DAY NOTICE TO HOLOGIC INC.

17. The 60 day notices were sent by Plaintiff to Hologic Inc. to request that they seek from the Icahn Group the profits that resulted from their 16 b violations. Those profits approached at a maximum $20,000,000. These requests were answered by a letter stating that the Icahn Group settled with Hologic Inc. for their Section 16 b violations for far less than what plaintiff here is seeking to recover.

**PAGE 5 OF 22**

**See Exhibit 1b. Attached**

The letter from Mark J. Casey General Counsel for Hologic of Nov 3, 2014

<u>PRELIMINARY STATEMENT REGARDING PUTS AND CALLS</u>

18. In all three cases, we find the Icahn Group claiming that calls were bought by the Icahn Group for prices incidentally above their "intrinsic value". In other words if the stock was trading at $35 and the calls had an exercise price of $26, the "intrinsic value" was $9. They claimed that the calls were bought by the Group at $9.25, notwithstanding that the calls had a theoretical value of near $19, and that calls with similar exercise prices and expiration dates were trading on exchanges near $19. In all three cases the premium received by the put seller = $0.01 + the discount on the calls.

19. Both the put writes and the call purchase were executed with the same contra party. In all three cases, they also allege that simultaneous with the purchase of the calls at slightly above "intrinsic value", they sold the same number of puts for a price of $0.01 (i.e. one penny). The puts had the same exercise price and the same time to expiration as the calls that the Icahn Group bought.

20. The theoretical values of the puts depend on the theoretical values of the calls. If the theoretical value of a call is $19.25 when the exercise price is $26 and the stock is trading at $35, the theoretical value and the market value of the put would be near $10.00. This was confirmed by market trading on the options exchanges.

21. In the Herbalife case, the Group ignored the theoretical values and the market values of the calls trading at $19.25 . They found compliant traders who aided their scheme and sold calls to the Icahn Group for $9.25 (i.e. $0.25 above intrinsic value) and, simultaneous with the call transaction, bought from the Icahn group puts for $0.01 which had a value of

$10.00.

22 . In the Hologic and Nuance cases, the calls were traded just $0.10 above "intrinsic value" and the puts were traded at $0.01 (i.e. one penny), when the calls had values of near $1.05 above "intrinsic value" and the puts were valued at near $1.05 each.

23. In each case,  the creation of the 10% beneficial ownership was delayed by the failure to report the written puts as additions to that 10% beneficial ownership. This reduced the number of puts written at one penny as being subject to Section 16 b.

24. In all three cases the premium received from the sales (writes) of the puts and profit made from the sales (writes) of the puts was not the $0.01 as claimed , it was the $0.01 plus the discounted value on the calls from their true  theoretical value and market value. That sum was the  true premium received from the written puts.

25. Claiming that the puts and calls could be executed  over-the-counter, at whatever prices the Icahn Group wished, constitutes fraud upon the market.

26 . To illustrate the Icahn Group misrepresentation, I give a similar example of misrepresentation.  Assume that after a 10% owner of Apple computer bought 1 million share of Apple Computer on the NYSE for $50. Five months later they sold a million shares of Apple Computer at $40 (over-the-counter) when it was trading at $100 on the NYSE.  The sale at $40 was simultaneous with a buy of 1 million shares of Visa  at $200 (over-the-counter) from the same person, when Visa was trading at $260 on the NYSE. The sale at $40 was actually a sale at $40 plus the $60 discount received on the Visa stock. No one would claim that those trades were genuine and resulted in avoiding section 16 b or tax evasion claims.

SUBSTANTIVE ALLEGATIONS  in regard to Herbalife

27.  Below is the explanation of the violations of 16 b of the Securities Act of 1934 by the Carl Icahn Group involving Herbalife calls and puts. They, the put writers claimed to have sold puts at one penny with a similar discount given back to the put seller in the form of a discount on calls purchased. The discount on the calls equaled the discount on the puts from their market and theoretical values.

28. Selling puts at one penny when the puts are worth and are trading at $1.00 or $5.00 or $10.00 or $20.00 and reporting those sales may be a violation of Federal law Title 18 section 1001.

Below is a link to a SEC Form 4 filing by the Icahn Group relating to Herbalife..
http://www.secform4.com/filings/1180262/000114036113010155.htm
**See Exhibit 2...Attached**

It was filed on Feb 14, 2013 and refers to transactions on February 12, 13, 14, 2013.

29 .The first transaction was the purchase of **1,167,241** calls with an exercise price of $23.5, expiring May 10, 2013. The price paid was $12.51. That left the number of calls owned totaling **9,478,979** after the purchase of **1,167,241.**

30. Below is a graph showing the stock price on Feb 12, 2013. The stock closed at $36.00 which is where the yellow arrow points

PAGE _8_ OF 22



31 .Prior to Feb 12, 2013, the total calls owned was **8,311,738**, all of which were purchased during the 2 weeks prior to Feb 12, 2013 after a large drop and before a substantial rise as shown on the graph above.

But the Icahn Group  also held **2,472,807** shares of stock at the time. So he had a beneficial ownership of **10,784,545** prior to Feb 12, 2013 not counting the **8,311,738** puts that he previously shorted (i.e. wrote).

If the shorted (written) puts were counted towards his beneficial ownership, the total would be **19,096,283** beneficial ownership on Feb 12, 2013.

32. To determine when the Icahn group went over the 10% beneficial ownership, we have to determine what the outstanding number of shares were when Icahn's group bought additional beneficial ownership.

Below is a link to Icahn's Schedule 13 d filing of Feb 14, 2013.

http://www.sec.gov/Archives/edgar/data/921669/000092846413000023/ hlfsch13d021413.htm

PAGE 9 OF 22

**See Exhibit 3...Attached**

It claims that the total beneficial ownership after the calls that were purchased on Feb 12,13,14, 2013 was **14,015,151,** if we do not count the puts shorted (i.e. written). They claim the amount equals 12.98% of the outstanding shares on Feb 14, 2013. The 12.98% is based on the alleged outstanding shares of **108, 001,495** as of October 24, 2012.

33. The above linked Schedule 13 d also shows the amounts and dates of calls bought by Icahn et al prior to Feb 12, 2013. The paragraph under "puts" explain that the puts would be cancelled when the calls are exercised.

See  the two sentences below :

**Put Options**

*The Reporting Persons have sold, in the over the counter market, European-style put options referencing an aggregate of 8,311,738 Shares, which expire on the earlier of January 28, 2015 or the date on which the corresponding American- style call option described above in this Item 6 is exercised. The Reporting Persons have also sold, in the over the counter market, European-style put options referencing an aggregate of 3,230,606 Shares, which expire on the earlier of May 10, 2013 or the date on which the corresponding American-style call option described above in this Item 6 is exercised.*

Now lets look at some outstanding share amounts before and after Feb 14, 2013. Below is a chart showing some shares outstanding for Herbalife:

http://ycharts.com/companies/HLF/shares_outstanding

This charts shows the Outstanding amount of **103,090,000** on Feb 13, 2013 not the 108,001,495 inserted into the 13 d filing of Feb 14, 2013 by the Icahn group. The period between Jan 28, 2013 and March 1, 2013 was the period where Icahn was buying calls and selling (writing) puts in big numbers . And perhaps Herbalife was buying stock to reduce outstanding shares.

**Herbalife Historical Shares Outstanding Data for the most relevant days**

March 31, 2013............................ 103,000,000 outstanding shares

Feb. 13, 2013 ............................103,090,000 outstanding shares

Oct. 24, 2012 .......................... 108,001,000 outstanding shares

35. Linked below is a July 2006 Davis Polk newsletter . See page 2. In page 2 paragraph 3, the letter addresses cash settled puts that are written and whether the writer becomes subject to 16 b as a 10% owner because of such sales (writes).

http://www.davispolk.com/files/07_13_06_PrivateEquityNews_jul_06.pdf

**See Exhibit 4....Attached**

It leaves open the possibility for Icahn to have been a 10% beneficial owner much earlier because of his put writing of **8,311,875** puts.

36. So in summary we have the open interest at **103,090,000** shares on Feb 13, 2013 and total beneficial ownership of **10,784,545** shares prior to Feb 12, 2013, calculated by adding the calls to the number of shares owned outright. So if we accept the numbers above as correct ( i.e. **103,090,000** outstanding shares and beneficial ownership as **10,784,545**) the Icahn Group passes the 10% beneficial ownership limit by **484,545** shares before Feb 12, 2013 and should have reported transactions of 10% ownership earlier.

37. Also, if the sale of the puts were added to his beneficial ownership, his ownership would have been**19,096,283** before Feb 12,2013 making it such that that perhaps 5 million of the puts were both sold and cancelled within 6 months causing a profit of about $50,000,000 that is recoverable from the sale of the puts prior to Feb 12, 2013. The $50,000,000 recoverable amount is based on the assumption that the true value of the puts that were sold was near $10.00 each. The market value of the puts with similar terms and the stock at similar prices near Feb 11, 2013 was 1000 times as great as the Icahn Group

claimed. Although he reported the sale of the puts at one penny, the actual premium received was one penny plus the discount on the calls that the Icahn Group simultaneous bought in equal numbers from the same person who bought the puts allegedly at one penny. There is in addition to the $50,000,000 another $2-3 million recoverable for the sales of puts on Feb 12,13,14, 2013.

38. Below is the link where all of the 11,500,000 calls were exercised and the 11,500,000 puts cancelled on Feb 28 and March 1, 2013

http://www.secform4.com/filings/1180262/000114036113010155.htm

**See Exhibit 5...Attached**

SEC Rule 16 b-6(d), linked below, makes the profit made from the sale (writing) of the puts that were sold (i.e. written) and cancelled within 6 months, while Icahn et al were 10% beneficial owners,  recoverable under 16 b.

That profit consisted of the a) one penny plus b) the discount of the calls with the same exercise prices and expiration dates that were bought from the same person who simultaneous bought the puts from the Icahn Group.

SEC Rule 16 b-6.

*(d) Upon cancellation or expiration of an option within six months of the writing of the option, any profit derived from writing the option shall be recoverable under section 16(b) of the Act. The profit shall not exceed the premium received for writing the option.*

a)The Icahn Group understated the value of the puts that were written by 99.9% and failed to indicate that simultaneous purchases of the calls were discounted by an amount equal to the discount at which the Icahn Group sold the puts for.

39. The Icahn group created the idea that they could sell the puts at one penny and have

the put buyer of the puts sell the calls to the Icahn Group far below their value in order to attempt to achieve three objectives.

**1. Reduce their margin requirements relative to what the requirement would be if the trades were made at market values,**

**2. Illegally reduce their tax payments and**

**3. Reduce their liability under Section16 b.**

b) Thus the profit on the Herbalife put writes is approximately $10.00 per option written with the exercise price of $26.00. The profit on the puts with a $23.5 exercise price is just $0.35 per underlying share, because of the much shorter expiration date and a lower exercise price.

c) The Icahn Group failed to calculate the number of outstanding shares correctly. This error leads to a delay in reporting their 10% ownership status, which resulted in less puts being subject to SEC Rule 16-b(d).

d)  They failed to add the puts written to Icahn's beneficial ownership making them 10% owner much earlier. Therefore the Icahn Group owes approximately $52-53,000,000 to Herbalife for which the group is liable under Section 16 b of the securities act of 1934.

40 .In summary, essentially the Icahn Group's only defense will be the claim that they can record writes of puts and purchases of calls over-the-counter  in Herbalife options for any prices that they wish to claim regardless of how ridiculous the claimed prices are.

<u>SUBSTANTIVE ALLEGATIONS in regard to Nuance Communications</u>

42. Below is a list of transactions whereby a group, headed by the Carl Icahn group, sold (wrote) puts on the stock of Nuance Communications. There were also calls bought by the Icahn Group in the same amounts and on the same dates from the same person who bought the puts

The discount on the calls equaled the discount on the puts from their market and theoretical values. They were selling puts at one penny when the puts are worth and are trading at $1.00 or higher on the exchanges.

**List of put sales (writes) by Icahn Group while a 10% owner according to their SEC Form 4 filings.**

| Date | # of shares | Exercise price | Expiration day |
|---|---|---|---|
| 5/1/2013…………1,000,000 | | $12.30 | 2/20/15 |
| 5/9/2013……… 1,000,000 | | $12.30 | 2/20/15 |
| 5/10/2013…..……511,349 | | $12.30 | 2/20/15 |
| 5/13/2013………..1,388,900 | | $12.30 | 2/20/15 |
| 5/14/2013…..…….516,283 | | $12.30 | 2/20/15 |
| 5/15/2013………..808,227 | | $12.30 | 2/20/15 |
| 5/16/2013…..…….250,000 | | $12.30 | 2/20/15 |
| 5/17/2013………..500,000 | | $12.30 | 2/20/15 |
| 5/20/2013…… …381,193 | | $12.30 | 2/20/15 |

| | | |
|---|---|---|
| 6/3/2013............957,104 | $12.30 | 2/20/15 |
| 6/4/2013............59,261 | $12.30 | 2/20/15 |
| 6/5/2013............2,177,817 | $12.30 | 2/20/15 |
| 6/6/2013............653,600 | $12.30 | 2/20/15 |
| 6/10/2013............779,357 | $12.30 | 2/20/15 |
| 6/11/2013............140,384 | $12.30 | 2/20/15 |
| 6/12/2013............250,000 | $12.30 | 2/20/15 |
| 6/13/2013............116,235 | $12.30 | 2/20/15 |
| 6/14/2013............750,000 | $12.30 | 2/20/15 |
| 6/17/2013............354,262 | $12.30 | 2/20/15 |
| 6/20/2013............262,005 | $12.30 | 2/20/15 |
| 6/21/2013............333,100 | $12.30 | 2/20/15 |
| 6/24/2013............550,229 | $12.30 | 2/20/15 |
| 8/07/2013............3,301,895 | $12.30 | 2/20/15 |
| 8/8/2013............72,938 | $12.30 | 2/20/15 |

**PAGE 15 OF 22**

| | | |
|---|---|---|
| 8/9/2013..............14,400 | $12.30 | 2/20/15 |
| 8/16/2013.............79,819 | $12.30 | 2/20/15 |
| 8/19/2013............250,000 | $12.30 | 2/20/15 |
| 8/23/2013............107,634 | $12.30 | 2/20/15 |
| 8/27/2013.............78,427 | $12.30 | 2/20/15 |
| 8/28/2013............644,241 | $12.30 | 2/20/15 |
| 8/29/2013............249,896 | $12.30 | 2/20/15 |

_____

43. On August 29, 2013,  20,890,119 calls were exercised by the Icahn Group, which cancelled all of the puts that were sold (written)  by the Icahn Group. The 20,890,119 total puts, that were cancelled, included approximately 2,300,000 not in the list above, that were apparently sold (written) prior to 5/1/2013.

43 .Below is a graph of Nuance stock prices where the yellow arrow points to the date when the Icahn Group started to buy calls and write the penny puts.

1
2
3
4
5
6
7
8
9
10


Arrow points to 5/1/2013

11
12
13
14
15
16
17
18

Arrow point to 8/07/2013 , when the Icahn Group bought calls on 3, 301,895 shares with an exercise price of $12.30 for a price of $6.39 when the stock was trading for About $18.59. They wrote puts on 3,301,895 shares for a penny on the same day with the same person who sold the Icahn Group the calls.

19
20
21 **See Exhibit 6 a.... Attached** Nuance SEC Form 4  5/1/13

22 **See Exhibit 6 b....Attached** Nuance SEC Form 4. 8/28/13

23

24 44 .Of the approximately 18,500,000 puts that were sold (written) and listed on the SEC

25 Form 4s, the average value of each put was approximately $1.05 each. Along with the

26 writing of those puts, the Icahn Group simultaneously purchased calls at a discount, the

27 discount was equal to the discount that Icahn gave to the buyers of the puts. Both the

28 buyer of the puts from the Icahn Group and the seller of the calls to the Icahn Group was

the same person.

According to SEC Rule 16b-6 (d),  from which I quote below:

**(d)** *Upon cancellation or expiration of an option within six months of the writing of the option, any profit derived from writing the option shall be recoverable under section 16(b) of the Act. The profit shall not exceed the premium received for writing the option.*

45 .Thus we have 18,500,000 puts that were sold (i.e. written) and cancelled within 6 months making the profit proceeds recoverable by Nuance. My estimate is that the puts had a value of approximately $1.05 each or 18,500,000 x $1.05 = $18,600,000, which is recoverable by Nuance.

The premium received from the sale of the puts equaled the one cent plus the discount to Icahn on the calls he bought for selling the 18,500,000 puts at one penny.

In summary essentially the Icahn Group's only defense will be the claim that they can record writes of puts and purchases of calls over-the-counter  in Nuance options at any prices that wish to claim regardless of how ridiculous those price are.

<u>SUBSTANTIVE ALLEGATIONS in regard to Hologic Inc.</u>

46. In  the  case of Hologic Inc, we find the Carl Icahn Group doing the same deceptions as they  did in the Herbalife and Nuances cases.

The group is claiming that the Icahn Group sold (i.e. wrote) puts reported at a penny per share and bought the same number of calls at a discount from the person who bought the one penny puts. The discount on the calls equaled the discount on the puts from their market and theoretical values.

Allegedly selling puts at one penny when the puts are theoretically worth and similar exchange traded options are trading at $1.00 or $1.50 or $2.00 is a deception.

47 . The writing of the puts took place simultaneous with the purchase of the calls at a discount. Both transactions were done by the same persons and both prices had the same discount to value.

Essentially the Icahn Group's only defense will be to claim that they can record writes of puts and purchases of calls over-the-counter in Hologic options for any prices that they wish to claim regardless of how ridiculous the prices are.

The actual recoverable amount depends on when the Icahn group became 10% owners. That time depends partially on whether the writing of the puts added to the beneficial ownership total.

Regarding the number of puts written that are subject to recovery by the issuer, we find the following:

48. Below is a schedule 13 D filing with the SEC made by

Keith Schaitkin, Esq.
Icahn Capital LP
767 Fifth Avenue, 47 th Floor
New York, New York 10153
(212) 702-4300

http://www.sec.gov/Archives/edgar/data/859737/000092846413000268/
holxsch13d112113.htm

In item 5, we find the following;

"(a) The Reporting Persons may be deemed to beneficially own, in the aggregate, 34,154,879 Shares (including options to purchase Shares), representing approximately 12.63% of the Issuer's outstanding Shares (based upon the

PAGE 19 OF 22

270,441,506 Shares stated to be outstanding as of August 1, 2013 by the Issuer in the Issuer's Form 10-Q filed with the Securities and Exchange Commission on August 7, 2013)."

**See the Outstanding Share data below:**

| | |
|---|---|
| Nov. 18, 2013 | 273.13M |
| Sept. 28, 2013 | 271.82M |
| Aug. 1, 2013 | 270.44M |

49 .So, assuming that Mr. Schaitkin's calculations on November 11, 2013 are correct, it can be estimated that Icahn Capital LP  Group had beneficial ownership of  7,110.728 more than 10% of the outstanding shares at the time of November 11, 2013.

Therefore, beneficial ownership of 10% came into effect prior to November 11, 2013 and It was required that the Icahn Group report on Form 4 to the SEC regarding all transactions that occurred after the beneficial ownership exceeded **27,044,150**.

50. These 7,110,000 beneficial ownership shares came into existence when the Icahn group bought more calls to buy 7,110,000 shares immediately prior to November 11, 2013. This buying of the 7.110 million calls occurred on November 6-10. Along with the buy of calls on 7,110,000 shares came the sale (write) of puts on 7,110,000 shares.